NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1388

U.S. PHILIPS CORPORATION,

Plaintiff-Appellee,

v.

PRINCO CORPORATION and PRINCO AMERICA CORPORATION,

Defendants-Appellants.

_____

DECIDED:  March 27, 2006

_____

Before BRYSON, LINN, and DYK, Circuit Judges.

PER CURIAM.

Princo Corporation and Princo America Corporation (collectively "Princo") appeal from a decision of the United States District Court for the Southern District of New York, which granted summary judgment to U.S. Philips Corporation and dismissed Princo's patent misuse claim.  Based on its interpretation of 35 U.S.C. § 271(d)(5), the district court concluded that Philips's package licensing did not constitute patent misuse as a result of unlawful tying.  Because this court, in U.S. Philips Corp. v. International Trade Commission, 424 F.3d 1179, 1186 (Fed. Cir. 2005), has recently interpreted section 271(d)(5) differently, we vacate and remand.

I

Philips owns patents to technology for manufacturing recordable compact discs ("CD-Rs") and rewritable compact discs ("CD-RWs"). Philips grants licenses to those patents through package licensing. Under its licenses, Philips requires licensees to pay a royalty based on the number of discs manufactured, regardless of how many of the patents are actually used in the manufacturing process. A manufacturer is not permitted to license Philips's disc patents individually and does not have the option of paying a lower royalty rate for a license to fewer than all the patents in the package.

In 1997, Princo entered into a CD-R license agreement with Philips. Shortly thereafter, however, Princo stopped paying the licensing fees, and Philips terminated the CD-R license agreement. In January 2002, Philips filed the instant action, charging Princo with patent infringement. Philips also filed a complaint with the International Trade Commission, claiming that Princo's importation of CD-Rs and CD-RWs violated 19 U.S.C. § 1337. The district court stayed the infringement suit pending completion of the Commission's investigation.

The Commission found Philips guilty of patent misuse based on its conclusion that Philips's licensing program effects an unlawful tying arrangement between licenses to patents that are essential to manufacture CD-Rs or CD-RWs and licenses to patents that are not essential to the manufacturing process. On appeal, this court reversed the Commission's decision. U.S. Philips Corp. v. Int'l Trade Comm'n, 424 F.3d. 1179, 1182 (Fed. Cir. 2005). We concluded that a package licensing agreement that includes both essential and nonessential patents "does not compel the customer to use the patentee's technology." Id. at 1190. In addition, we held that the Commission had failed to

acknowledge the procompetitive benefits of package licensing. Id. at 1192. We noted that package licensing "reduces transaction costs by eliminating the need for multiple contracts and reducing licensors' administrative and monitoring costs." Id. Moreover, we noted that package licensing has the procompetitive effect of "reducing the degree of uncertainty associated with investment decisions" because it "provides the parties a way of ensuring that a single licensing fee will cover all the patents needed to practice a particular technology." Id. at 1193. Accordingly, we held that "the analysis that led the Commission to apply the rule of per se illegality to Philips's package licensing agreements was legally flawed." Id.

We also concluded that the Commission erred in its rule of reason analysis. 424 F.3d at 1198. We explained that there was no showing that "any manufacturer had actually refused to consider alternatives to the technology covered by [the nonessential] patents or . . . that any commercially viable alternative actually existed." Id. Thus, we held that there was insufficient evidence to support the Commission's conclusion that including nonessential patents in Philips's patent package had an actual anticompetitive effect. Id. at 1195. We also held that the Commission failed to give adequate consideration to the procompetitive effects of package licensing and did not properly acknowledge problems associated with licensing each patent individually, "such as the transaction costs associated with making individual patent-by-patent royalty determinations and monitoring possible infringement of patents that particular licensees chose not to license." Id. at 1198. Consequently, we remanded for further proceedings so the Commission could "address all of the issues presented by the administrative law judge's decision under both the per se and rule of reason analysis." Id.

In a second pertinent development postdating the district court's decision, the Supreme Court recently reexamined whether, in antitrust tying cases, courts should recognize a presumption of market power in a patented product. Ill. Tool Works, Inc. v. Independent Ink, Inc., No. 04-1329 (U.S. Mar. 1, 2006). Although that case arose in the context of an antitrust claim, the Supreme Court commented on the defense of patent misuse, noting that Congress had "narrow[ed] the patent misuse defense" with the enactment of 35 U.S.C. § 271(d)(5). Id., slip op. at 12.

In the instant case, the district court based its summary judgment ruling on section 271(d)(5). The court interpreted that statute to set forth the limits of the doctrine of patent misuse in the context of tying arrangements. Under section 271(d)(5), the court held, "an unlawful tie exists when a buyer is forced to purchase either a license in a patent for a second product or to purchase the second product itself." The court added that multiple patents covering a single product "do not implicate the statute," and that requiring a buyer to acquire rights in additional patents covering the same product "does not constitute use of a patent to control a separate unpatented product." Accordingly, the court held that Philips's package licensing of patents for a single product "is not tying within the meaning of § 271(d)(5)" and therefore could not constitute patent misuse.

II

Section 271(d)(5) designates specific practices as not constituting patent misuse. In particular, the statute provides that it is not patent misuse for a patentee to "condition[ ] the license of any rights to [a] patent . . . on the acquisition of a license to rights in another patent . . . unless, in view of the circumstances, the patent owner has market

power in the relevant market for the patent . . . on which the license . . . is conditioned." In our decision in the first Philips case, we held that section 271(d)(5) "does not define the scope of the defense of patent misuse, but merely provides a safe harbor against the charge of patent misuse for certain kinds of conduct by patentees." 424 F.3d at 1186. In Illinois Tool Works the Supreme Court advanced a similar characterization of section 271(d)(5), stating that "Congress included a provision in its codification that excluded some conduct . . . from the scope of the patent misuse doctrine." Ill. Tool Works, slip op. at 11.

The district court interpreted section 271(d)(5) not as a safe harbor provision, but as a definition of patent misuse in the context of tying arrangements. Moreover, the district court concluded that section 271(d)(5) defines patent misuse in that context as present only "when a buyer is forced to purchase either a license in a patent for a second product or to purchase the second product itself" and that "multiple patents covering a single product do not implicate the statute." That interpretation of section 271(d)(5) is inconsistent with the proper construction of the statute, which provides a safe harbor for certain conduct, not a comprehensive definition of patent misuse. In addition, the court erred in reading the statute to preclude a finding of patent misuse unless the tied patents involved multiple products. Accordingly, without suggesting that the court reached the wrong ultimate conclusion on the issue of patent misuse, we hold that the court erred by relying on section 271(d)(5) as the basis for its decision. We therefore vacate the district court's dismissal of Princo's patent misuse claim and remand for further consideration in light of this court's decision in Philips and the Supreme Court's decision in Illinois Tool Works.